In re Mario R. AVILES, Jr. a/k/a, d/b/a Mario Aviles, Debtor.

Georgina CARBAJO, Plaintiff,

v.

Mario R. AVILES, Jr., a/k/a, d/b/a Mario Aviles, Defendant.

Bankruptcy No. 85–02798–BKC–TCB.
Adv. No. 86–0070–BKC–TCB–A.

United States Bankruptcy Court,
S.D. Florida.

March 20, 1986.

Robert L. Roth, P.A., Miami, Fla., for plaintiff.

Roberto F. Fleitas, Miami, Fla., for defendant.

## MEMORANDUM DECISION

THOMAS C. BRITTON, Chief Judge.

The plaintiff/judgment creditor seeks exception from discharge under 11 U.S.C. § 523(a)(6) for that part of her state court judgment against the debtor which represents punitive damages, $50,000. The debtor has answered and the matter was tried on March 6.

The facts are in sharp conflict. Resolving the conflicting evidence, I find that the plaintiff first consulted the debtor, a medical doctor, who specialized in gynecology and obstetrics and who practiced with his father. At that time she gave a history of having undergone a tubal ligation and expressed a desire to reverse the process and again restore her ability to bear children.

She was sent to a radiologist who saw plaintiff on February 27 and whose report confirmed that both fallopian tubes were obstructed, confirming the patient's history of a tubal ligation. The radiological examination, however, was consistent with obstructions resulting from causes other than a tubal ligation and her examination could not confirm independently that the patient had undergone that procedure.

Eight months later, on October 28, plaintiff again consulted the debtor, complaining of pain in the right ovary. There was an initial diagnosis of a possible ovarian mass.

On November 11, the patient underwent an operation performed by the debtor, assisted by his father, in which a tuboplasty was performed. This is a delicate operation, frequently unsuccessful, in which the function of one or both fallopian tubes is restored by the insertion of plastic tubes.

Plaintiff insists that she never consented to that procedure and that she only consented to an operation by the father, and not the debtor. She explains that she was divorced, with teenage children, was past 40 and had no interest in again bearing children. This testimony is contradicted by the debtor and his father and is a critical issue in this case.

The surgical consent form executed by the plaintiff clearly designates the debtor to be the surgeon. I reject the plaintiff's explanation that the term "Jr." has no meaning or common equivalent in the Spanish language and that with her Cuban background she was completely unaware of its significance. I find that the term "Jr." is commonly used in the Spanish language, having been borrowed from the English usage, and that it has exactly the same significance it has in English and that this practice has existed for at least this plaintiff's adult life.

The surgical consent form did not list or include the tuboplasty. Accepted medical practice requires that consent be obtained for such a procedure and that the surgical consent form signed by the patient expressly include that procedure.

Both the debtor and his father are adamant that the procedure was fully explained to the patient and that she had given her informed consent before the operation, notwithstanding the fact that the procedure was negligently omitted from the surgical consent form. There was no attempt in the medical records to conceal the performance of the procedure nor is there any suggestion that the debtor had any motive or actual intent to cause the plaintiff any personal harm by performing this procedure.

The debtor had performed this procedure once before as a resident. His father had never performed the procedure.

As is normal and was anticipated, the patient returned for a second operation on November 25 for the removal of "foreign bodies", the plastic tubes used in the tuboplasty. The surgical consent form covered this procedure and designated the debtor, whose father was then out of the country. Plaintiff expressed no dissatisfaction.

The attempted removal was unsuccessful. The patient was so advised and she returned on December 15 for a third operation which appeared to complete her treatment and she was subsequently discharged.

During the debtor's follow-up treatment, there was no indication of dissatisfaction and the plaintiff made no complaint until some time later after she had consulted another doctor. She then filed a civil action against both father and son and recovered a judgment for compensatory damages of $100,000 and $50,000 punitive damages against each defendant. The claim for compensatory damages was fully satisfied. The state court judgment was neither required to nor did it reflect any finding of a "willful and malicious injury", the basis for exception from discharge under § 523(a)(6).

The state court action was not defended by the debtor who had become an alcoholic. His medical license has been suspended.

Plaintiff subsequently underwent a complete hysterectomy performed by another physician.

■ It is plaintiff's burden to prove by clear and convincing evidence that her claim is based upon a willful and malicious injury by the debtor to her. The term "willful" means "deliberate or intentional" and "malicious" includes an injury that was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill will.

"Therefore, a wrongful act done intentionally which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury." *Collier on Bankruptcy*, ¶ 523.16[1] n. 9 (15th Ed.1985).

■ I find that in this case the injury sustained by the plaintiff was neither willfully nor maliciously caused by the debtor. There is no question in my mind that the injury resulted from negligence and probably gross negligence on the debtor's part. I do not believe that he had adequate experience to perform this procedure assisted only by his father who had never performed the procedure. It is clear, however, since the enactment in 1978 of the present Code that:

"Congress expressly overruled prior caselaw that had refused dischargeability when the conversion occurred innocently or recklessly." *In re Held*, 734 F.2d 628, 629 (11th Cir.1984).

As was the case in *Held*, I find that the debtor acted in a good faith though perhaps mistaken belief that plaintiff had requested as well as consented to his performance of the tuboplasty and that everything he did to or for the plaintiff was done in a good faith attempt to help her, not harm her. The state court judgment, even though including an award for punitive damages, does not collaterally estop the debtor. The debtor did not willfully and maliciously injure the plaintiff.

As is required by B.R. 9021(a), a separate judgment will be entered dismissing this complaint with prejudice. Each party shall bear its own costs.